# SECOND DEPARTMENT,

AT

# GENERAL TERM.

## December, 1882.

28 | 447
136a | 41

---

MICHAEL BENNETT AND EDWARD COLGAN, AS EXECUTORS, ETC., RESPONDENTS, v. JOHN M. PECK, APPELLANT.

*Tax sales — the comptroller may sell lands in Kings county assessed to residents — Chap. 154 of 1841 was not repealed by chap. 427 of 1855 — a mortgagee is not entitled to notice, unless he files a description of the mortgage with the comptroller — 1855, chap. 427, sec. 82 — 1862, chap. 285 — 1870, chap. 280.*

Prior to the passage of chapter 154 of 1841, lands in Kings county assessed as resident lands could not be sold for the non-payment of taxes; while lands assessed to non-residents were returned to the comptroller and sold by him as provided in section 52 of 1 Revised Statutes, 407.

The act of 1841, after imposing certain interest and per centages upon lands of "residents and non-residents" when the tax was unpaid, directed that whenever "any tax" should remain unpaid after the final return of the collectors of the several towns in the county of Kings and of the several wards of the city of Brooklyn, interest should be charged thereon at the rate of seven per cent per annum, and also upon the amount of the per centages imposed by the act.

It then provided that it should " be lawful to enforce the payment of any such tax with the increase of such per centage or per centages, together with such interest thereon as aforesaid, on the sale of lands for the non-payment of taxes in the manner now provided by law."

*Held*, that the act was intended to and did authorize the sale by the comptroller of lands assessed to residents as well as of those assessed to non-residents. (GILBERT, J., dissenting.)

The act of 1841 being a special act was not repealed by the passage of the general act for the collection of taxes. (Chap. 427 of 1855.)

Since the passage of chapter 280 of 1870, repealing chapter 285 of 1862, which repealed section 82 of chapter 427 of 1855, a purchaser of lands at a State tax sale is only required to notify such mortgagees of the lands as have filed with the comptroller a description of the mortgage, within two years from the time of the sale.

· APPEAL from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court without a jury.

The action was brought to recover the possession of certain premises in the town of New Lots, which the defendant claimed to own by virtue of a deed from the comptroller of the State, executed in pursuance of a sale thereof for the non-payment of the taxes assessed upon the lands for the year 1869. The plaintiff acquired his alleged title to the premises under the foreclosure of a mortgage thereon. The mortgage was executed October 21, 1870, and the premises were sold under a decree of foreclosure, December 19, 1877. The land was assessed for the tax in 1869.

*Charles H. Otis*, for the appellant.

*John McKenna*, for the respondents.

BARNARD, P. J. :

By the Revised Statutes before 1861, lands in Kings county assessed as resident lands could not be sold for non-payment of taxes. The general law under which the collection of Kings county taxes were regulated, provided that the tax on resident lands should be added to the tax against the same lands the following year. (1 R. S., 403, § 27.)

The list of the taxes against non-residents' land was returned to the State comptroller. (Sec. 26.) The comptroller sold these non-residents' land after the taxes charged upon them should remain unpaid two years from the first of May after the assessment. (1 R. S., 407, § 52.)

In 1841 the legislature passed an act in relation to the collecting of taxes in Kings county. (Chap. 154, Laws of 1841.) By this act there was imposed certain interest and per centages upon lands when the tax was unpaid " of resident and non-residents," and section 6 of the act is in these words :

"Whenever any tax shall remain unpaid on the final return of the collectors of the several towns in the county of Kings and of the

several wards of the city of Brooklyn to the treasurer of the said county, interest shall become chargeable thereon at the rate of seven per cent per annum on the amount of such tax, and also on the amount of the per centage which may have accrued thereon in the manner hereinbefore provided; and it shall be lawful to enforce the payment of any such tax with the increase of such per centage or per centages, together with such interest thereon as aforesaid on the sale of lands for the non-payment of taxes in the manner now provided by law."

In 1869 a tax was assessed against lands in New Lots, Kings county, to one Mallory, a resident.

This tax was returned as unpaid to the comptroller, and the land was regularly sold by him, and the defendant represents that title. The plaintiff is the owner unless cut off by that sale. This presents the question whether any power was given to the comptroller to sell residents' land under this special act of 1841. In the first place, it is proper to mention that in 1855 the legislature passed a general law in reference to the collection of taxes. (Chap. 427, Laws of 1855.) By section 5 of this act the tax on resident lands which remained unpaid were to be in the following year assessed as non-resident land and sold by the comptroller as such.

We agree with the Special Term that the act of 1841, being a special act, was not repealed by the general act passed in 1855. We arrive at a different conclusion in reference to the construction put upon section 6 of the act of 1841. The law was designed to effect some practical result. Before that time residents' land could not be sold. Section 5 of the act of 1841, refers in terms to the duties of collectors, and charges per centages and interest on resident and non-resident lands. The section in question (sec. 6), makes it lawful to enforce the payment of "any" unpaid taxes on the sale of lands for non-payment of taxes "in the manner now provided by law." If section 6 referred to non-residents' land only, it was not necessary to provide for a sale of such lands — that power existed already. If the section did not include resident lands, no additional power was given to boards of supervisors to charge the increased per centage in the next year tax levy. It does not seem reasonable that this act of 1841 should be passed merely to provide for the collection of the fees which ought to have been

, paid the collector by a delinquent taxpayer. The words of the act include all taxes. Whenever any tax still remains unpaid, it may be enforced on a sale of lands in the manner now provided by law. The fair meaning seems to be that where only non-residents' lands may now be sold by law, "any tax" in Kings county may be enforced on the sale of the lands in the manner now provided by law, that is, after two years and by the comptroller, and on the statute notice. Non-residents' taxes imposed elsewhere than in Kings county, can be enforced now by sale, but in Kings county all taxes may be enforced in the same way.

The plaintiff's claim as mortgagee has no basis. By the act of 1855, section 77, the right of mortgagees was preserved until the purchaser at the comptroller sale gave a notice of the sale to the mortgagee requiring him to pay the purchase-price paid within six months after notice.

By section 82 of the act of 1855, the notice was to be given to such mortagees as should file with the comptroller a description of the mortgage within two years after the sale. In 1862 (chapter 285, Laws of 1862) the legislature repealed the eighty-second section, so that notice must be in all cases given to the mortgagee without limitation of time or person. By chapter 280 of Laws of 1870, the legislature repealed the statute repealing the eighty-second section of the act of 1855, and thereby reinstated the law of 1855, which limits the notice to be given to those only who shall file with the comptroller notices, particularly describing the mortgage within two years after the sale.

The plaintiff did not file such a notice with the comptroller within two years after the sale, and this section, requiring the notices within two years after the sale to be filed with the comptroller, has been in force since 1870, and covered of course the sale in question, which which was made in 1877.

The judgment should, therefore, be reversed, and new trial granted, costs to abide event.

DYKMAN, J. concurred; GILBERT, J., dissented.

Judgment reversed, and new trial granted, costs to abide event.